IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-1452-BO-BM

| | | |
|---|---|---|
| WILLIAM COLT CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| MICHAEL HAL SHAW II, | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion for summary judgment. [DE 40].

Plaintiff responded [DE 46] and defendant replied [DE 50]. Both parties filed statements of

material facts. [DE 41]; [DE 47]. A hearing was held before the undersigned on October 16, 2025,

in Raleigh, North Carolina. In this posture, the motion is ripe for decision. For the following

reasons, the motion is denied.

BACKGROUND

Around 7:00 p.m. on Friday October 8, 2021, defendant Michael Hal Shaw II, a Bladen

County Sheriff's Deputy, pulled over a Jeep Patriot. [DE 41, ¶ 1]; [DE 47, ¶ 1]. Shaw recognized

the driver, plaintiff William Cain, as Shaw had charged him years before for carrying a concealed

gun. [DE 41, ¶ 2]; [DE 47, ¶ 2]. Shaw determined that Cain was driving on a suspended license.

[DE 41, ¶ 3]; [DE 47, ¶ 3]. After backup deputies arrived, Cain sped away from the traffic stop.

[DE 41, ¶ 6]; [DE 47, ¶ 6]. A high-speed chase through Bladen County ensued, and Cain threw

some items out of the car as he sped away. [DE 41, ¶ 7–8]; [DE 47, ¶ 7–8]. Cain lost control of the

vehicle and drove into a pond. He exited the partially submerged vehicle, and as he walked out of

the pond, police officers instructed him to "[g]et down on the ground." [DE 41, ¶ 10]; [DE 47, ¶

10].

Once he reached the embankment, Cain fell to his hands and knees. While Cain was on the ground, Shaw (who outweighed him [DE 47, ¶ 31] by around 100 pounds) struck him in the head at least three times with a flashlight. The blows are visible on another deputy's body-camera footage. [DE 41, ¶ 16]; [DE 47, ¶ 16]. Cain was transported to Bladen County Hospital, where he was treated and approved for booking into the Bladen County jail. [DE 41, ¶ 18]; [DE 47, ¶ 18]. He was charged with felony and misdemeanor offenses. [DE 41, ¶ 19]; [DE 47, ¶ 19].

The parties' views of the facts differ in several respects. Shaw claims he saw a box of handgun ammunition in Cain's glove box at the inception of the traffic stop. [DE 41, ¶ 4]. Having charged Cain with carrying a concealed weapon in the past and having seen ammunition at the traffic stop, Shaw maintains he reasonably believed Cain was armed when he emerged from the pond. Cain, however, retorts that when he emerged from the pond, his "wet clothes were plastered to his slim body" so that it was clear he had no bulge in his clothing, at his waist or anywhere else, and no weapon. [DE 47, ¶ 25]. Therefore, plaintiff maintains Shaw could not have reasonably believed Cain was armed. Once Cain had emerged from the pond and fallen to his hands and knees, the parties also disagree about whether he appeared to reach for his waistband, so that Shaw could have believed he reached for a gun. [DE 41, ¶ 11]; [DE 47, ¶ 35].

Cain now asserts claims against Shaw for excessive force under 42 U.S.C. § 1983 and for assault and battery under state law. He seeks punitive damages.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met,

2

the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## I. Summary Judgment

Law enforcement officers violate an individual's Fourth Amendment rights when they effect a seizure using excessive force. *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). This standard is objective, and thus without regard to the officer's subjective intention or motivation. *Schultz*, 455 F.3d at 477.

A court does consider, however, the facts and circumstances confronting the officer, and it must focus its attention on the moment the force was employed. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citations omitted). Specific factors to be considered are (1) the severity of the

3

crime at issue, (2) whether the suspect poses an immediate threat, and (3) whether the suspect is actively resisting or attempting to flee. *Graham*, 490 U.S. at 396. Additional considerations include "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force" used. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record." *Scott*, 550 U.S. at 381 n.8 (emphasis omitted).

Applying the *Graham* factors to the present case, Cain's crime was rather severe. He had led the police on a dangerous, high-speed car chase and crashed his car into a pond. However, in the light most favorable to the plaintiff, he was not resisting at the time the challenged force was used. Upon exiting the car, Cain made his way toward land, where he would be surrounded by several police officers. As instructed, he had come down to his hands and knees as soon as he reached the shore. He brought his hands to his lower back when instructed to put his hands behind his back. [DE 47, ¶ 25]. He also did not pose an immediate threat. Before Cain dropped to his hands and knees, he had emerged from the water with his wet clothes "plastered to his slim body[,]" and no bulges indicating the presence of a weapon were visible. *Id.* Cain had complied with instructions and was face down on the ground—Shaw grasped Cain's arm before delivering the blows. "[S]uspects can be secured without handcuffs when they are pinned to the ground, and . . . such suspects cannot be subjected to further force." *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 668 (4th Cir. 2020). Viewing the facts in the light most favorable to the plaintiff, the *Graham* factors weigh in favor of finding excessive force.

Furthermore, plaintiff suffered rather severe injuries: he received eight staples to his head as treatment for the lacerations resulting from the blows. [DE 47, ¶ 29]. A reasonable jury might

credit plaintiff's view of the facts and find that Cain surrendered and complied as soon as he reached the shore, but that Shaw gratuitously delivered the blows at the first opportunity, meaning he made no meaningful effort to temper or limit the amount of force he used. *See Kingsley*, 576 U.S. at 379. Shaw was also indicted by a grand jury on the charge of assault with a deadly weapon inflicting serious injury. [DE 47, ¶ 36]. This is further indication that, in the light most favorable to the plaintiff, a jury could find a constitutional violation occurred.

Cain also asserts state law claims for assault and battery. Under North Carolina law,

> a law-enforcement officer is justified in using force upon another person when and to the extent that he reasonably believes it necessary . . . [t]o defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force while effecting or attempting to effect an arrest[.]

N.C.G.S. § 15A-401(d)(1).

For the reasons discussed above, a reasonable jury could find that Cain was complying with police demands, and that an officer in Shaw's position could not have reasonably expected Cain to use force against him or believed force was necessary to effect the arrest. Both parties appear to agree that the state law claims should rise and fall with the § 1983 excessive force claim. [DE 43, pp. 10–11]; [DE 46, p. 27].

> [T]he Fourth Circuit has flatly stated—in a case where the court determined that an officer was not entitled to qualified immunity on the plaintiff's § 1983 claim—that "[t]he parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well."

*Barricks v. Wright*, No. 7:23-CV-00551, 2025 WL 692362, at *18 (W.D. Va. Mar. 4, 2025), *aff'd*, 168 F.4th 210 (4th Cir. 2026) (quoting *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994)). On the facts viewed in the light favorable to the plaintiff, a reasonable jury could find in the plaintiff's favor. His motion for summary judgment must therefore be denied.

## II. Qualified Immunity and Public Official Immunity

Because the Court concludes that a reasonable jury could find a constitutional violation, it turns to whether defendant is entitled to qualified immunity. Defendant has raised the defense of qualified immunity as to the § 1983 claim asserted against him. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Where qualified immunity has been raised, viewing the facts and drawing the reasonable inferences in the light most favorable to the plaintiff generally means adopting the plaintiff's version of the facts. *Scott*, 550 U.S. at 378; *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008); *see also Hensley on behalf of N. Carolina v. Price*, 876 F.3d 573, 579 (4th Cir. 2017) (court must "take the facts in the light most favorable to the plaintiffs to determine the applicable questions of law and ignore any contrary factual claims."). A court "do[es] not make credibility determinations in resolving the first prong of the [qualified immunity] analysis." *Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213, 220 (4th Cir. 2018).

To determine whether the defendant officer acted with qualified immunity, the first question is whether the officer violated Cain's Fourth Amendment rights. As previously discussed, a reasonable jury could credit plaintiff's view of the facts and find that defendant used excessive force.

6

As for the second prong of the qualified immunity analysis, a suspect's right to be free from gratuitous and disproportionate force when he has submitted to the police is clearly established.

> We also have stated in forthright terms that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity. The fact that the force used in the present case emanated from a taser, rather than from a more traditional device, is not dispositive. The use of any unnecessary, gratuitous, and disproportionate force, whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured.

*Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 734–35 (4th Cir. 2013) (internal quotations and citations omitted). "[T]he Fourth Circuit has concluded that punches were excessive when applied to suspects who were already detained, secured, and no longer resisting." *Allen v. City of Dunn*, 708 F. Supp. 3d 743, 755 (E.D.N.C. 2023) (emphasis in original) (citing *Thomas v. Holly*, 533 F. App'x 208, 218 (4th Cir. 2013); *Jones v. Buchanan*, 325 F.3d 520, 523–25, 528–30 (4th Cir. 2003)).

Plaintiff's view of the instant case is similar to other cases—characterized by the subject's lack of resistance and secured, unarmed state—where police officers were not entitled to qualified immunity given those plaintiffs' versions of the facts. *See Thomas*, 533 F. App'x at 218 (police officer transgressed a bright line when he repeatedly punched a subject in the back of the head, even though the suspect was surrounded by officers, pinned, and face down on the ground); *Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993) (officer was not entitled to qualified immunity after pinning a smaller subject to the ground and then forcefully pushing her face into the ground, cracking her teeth); *Rowland*, 41 F.3d at 172–74 (affirming denial of qualified immunity where plaintiff's version of the facts would have demonstrated that when he offered mild resistance to arrest, the officer punched him, threw him to the ground, and wrenched his knee until it cracked). Viewing the facts in the light most favorable to the plaintiff, Cain was unarmed, secured, and no longer resisting when Shaw injured his head with the flashlight—and it is clearly established that

7

such a use of force is unlawful in those circumstances. Because a jury could credit plaintiff's version of the events, defendant is not entitled to qualified immunity at summary judgment.

As to the state law claims, defendant has raised the defense of public official immunity. Public official immunity precludes certain suits against public officials in their individual capacities. "Police officers engaged in performing their duties are public officials for the purposes of public official immunity." *Lopp v. Anderson*, 251 N.C. App. 161, 168 (2016). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (citing *Smith v. State*, 289 N.C. 303, 331 (1976)). For the same reasons as his qualified immunity defense fails, a reasonable jury could find that Shaw acted with malice in striking Cain while he was unarmed and compliant. Defendant is not entitled to public official immunity.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [DE 40] is DENIED. The Court anticipates setting a trial in this case during its May 2026 term. A specific date and time will be set by separate notice. This action is REFERRED to United States Magistrate Judge Brian S. Meyers to conduct a pretrial conference.

SO ORDERED, this **27** day of March 2026.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8